IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                CASE NO. 1:06-cv-00138-MP-AK

REAL PROPERTY LOCATED AT 1912 SE 15TH AVENUE GAINESVILLE FL WITH ALL
IMPROVEMENTS AND APPURTENANCES THEREON,

      Defendant.

_____/

## O R D E R

This matter is before the Court on Doc. 14, the Government's Motion for Summary

Judgment, including a Motion to Strike, to which claimant Vernica Haynes responded, Doc. 17.

A hearing was held, Doc. 33, where both sides presented arguments.   As discussed more fully

below, summary judgment is granted in favor of the government in part, and denied in part. That

is, summary judgment for the government is granted with regard to the issue of whether a

"substantial connection" is shown between the property to be forfeited and the illegal activity.

However, factual issues exist which are relevant to determining if the forfeiture of the house

would be grossly disproportionate to the illegal conduct connected to the house.  Thus, summary

judgment on that issue is not appropriate and a jury trial must be held.

Before considering the motions for summary judgment, however, the Court must first

address the motion to strike answer, filed by the government.  Section 983(a)(4) and the

Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture ("Supplemental

Rules") govern civil forfeiture actions and establish the statutory standing requirements for

contesting forfeiture. <u>See</u> 18 U.S.C. § 983; Rule G(1) of the Supplemental Rules; <u>United States</u>

v. $38,000.00 Dollars in U.S. Currency, 816 F.2d 1538, 1544-45 (11th Cir.1987).  Under Rule

G(5) of the Supplemental Rules, claimants are required to file both a verified claim asserting

their interest in the seized property and an answer to the government's forfeiture complaint. To

be timely, the claim must be filed within 30 days of notice and the answer to the complaint must

be filed within 20 days after filing the claim.

      Here, claimant filed a claim within 30 days, and filed an answer within 20 days of that.

However, the claim was not accompanied by a verified statement of interest in the property

under oath.  Thus, the government moved to strike the answer.  Immediately, claimant remedied

the deficiency and filed Doc. 16, Verified Statement of Interest in Property.

      A district court has discretion to extend the filing period for the claim and answer,

although it may also insist on strict compliance with the Supplemental Rules.  U.S. v. $12,126.00

in U.S. Currency, 337 Fed.Appx. 818, 819 (11th Cir. 2009), citing United States v. $125,938.62,

370 F.3d 1325, 1328-29 (11th Cir.2004).  In the instant case, because the government has not

suffered any prejudice from the lack of the verified statement in the original claim, and the

claimant showed due diligence in immediately correcting the error, the interests of justice

support extension of the time for filing a verified statement, nunc pro tunc, to the date of the

filing of Doc. 16.

      We turn now to the merits of the summary judgment motion.  On July 11, 2006, the

United States filed a complaint pursuant to 21 U.S.C. § 887 (a)(7) seeking the forfeiture of all

property located at 1912 S.E. 15th Avenue, Gainesville, Florida. (Doc. 1, Complaint for

Forfeiture In Rem, at 2.)  The parties do not dispute that the property is owned by Haynes.  (Doc.

16, Verified Statement of Interest in Property, at 1.)  Forfeiture was sought based on allegations

that the property was used to facilitate the sale of marijuana. ( See Doc. 1 at 2-3.)

The government alleges that Haynes sold marijuana out of the house on hundreds of occasions. For example, the government alleges that she sold Tony Mims marijuana on more than 100 occasions in the six months prior to October 2001. (Doc. 14 at 2 ¶ 1 and Ex. A ¶ 3.) These sales totaled approximately fourteen pounds of marijuana. (Doc. 14 at 2 ¶ 1.) The government further alleges that the Gainesville Police Department orchestrated several successful controlled buys from Haynes between September 2004 and March 2005. (Doc. 14 at 2 ¶ 2.) The government also alleges that Kevin Nelson purchased hundreds of pounds of marijuana from Haynes at the property between 1996 and 2004. (See Doc. 14, Ex. A ¶ 4.) Finally, the government alleges, and Ms. Haynes appears to concede, that over three pounds of marijuana were found in Haynes' home during the execution of a search warrant on April 7, 2005. (See Doc. 14 at 2-3, ¶¶ 3-7.)

Haynes initially denied all allegations in the complaint for forfeiture (Doc. 9, Answer and Affirmative Defenses ¶ 1), but no longer disputes that 3.13 pounds of marijuana were found in her home during the search on April 7. (Doc. 17 at 3 ¶ 7.) Haynes still disputes all other allegations. (Doc. 17 at 1 ¶ 1.) Haynes specifically denies selling Kevin Nelson hundreds of pounds of marijuana over the years. (Doc. 17 ¶ 1.) Haynes points to her modest lifestyle as evidence of the falsity of this allegation. (Doc. 17 ¶ 1.)

As a defense to the government's motion for summary judgment, Haynes contends that ordering forfeiture of her home would violate the Excessive Fines Clause of the Eighth Amendment. The Eighth Amendment of the United States' Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VII. Because the Eighth Amendment is aimed at punishment, some courts found the Excessive Fines Clause only applied in criminal proceedings.

And, since a forfeiture under 21 U.S.C. § 881 was traditionally considered a civil proceeding, many courts held that the Excessive Fines Clause did not apply to such proceedings. The Supreme Court in <u>Austin v. United States</u>, 509 U.S. 602, 609 (1993), however, made clear that the question is not whether the proceeding is criminal or civil, but whether the forfeiture is sought to punish. <u>Id.</u> at 610. Thus, after <u>Austin</u>, a civil sanction that functions as retribution or a deterrent, and is not solely remedial, is punishment and subject to limitation by the Excessive Fines Clause. <u>Id.</u> <u>Austin</u> held that forfeiture under 21 U.S.C. §§ 881(a)(4) and (a)(7) is a "payment to [the] sovereign as punishment for [an] offense." <u>Id.</u> at 622 (*quoting* <u>Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.</u>, 492 U.S. 257, 265 (1989)). Therefore, the Excessive Fines Clause applies to forfeitures under those provisions. <u>Austin</u>, 509 U.S. at 622.

Although <u>Austin</u> held that civil forfeitures, specifically those under § 881(a)(7), are subject to the Excessive Fines Clause, it left open the question of what "excessive" means in this context. On this point, Justice Scalia maintained in his concurrence that the only question should be the relationship of the property to the offense. <u>Austin</u>, 509 U.S. at 628 (Scalia, J., concurring). Is the relationship of the property to the offense -- deemed the instrumentality of the property -- "close enough to render the property, under traditional standards, 'guilty' and hence forfeitable?" <u>Austin</u>, 509 U.S. at 628 (Scalia, J., concurring). If so, the value of the property is irrelevant and the forfeiture is not excessive. <u>See</u> <u>Austin</u>, 509 U.S. at 628 (Scalia, J., concurring). The majority in <u>Austin</u> noted that this instrumentality of the property may be a relevant consideration in the excessiveness inquiry, but refused to hold that instrumentality was the only factor a court should consider. <u>Austin</u>, 509 U.S. at 623 n.15. The standard for excessiveness was more fully addressed in <u>United States v. Bajakajian</u>, 524 U.S. 321 (1998).

In <u>Bajakajian</u> the defendant was found trying to fly out of the country with $357,144 of

unreported currency.  <u>Id.</u> at 324-25.  The government charged Bajakajian with failing to report

and sought forfeiture of the full amount of unreported currency.  <u>Id.</u> at 323-24.  However, the

district court found that ordering forfeiture of the full amount would be "grossly

disproportionate" to Bajakajian's crime, and instead ordered forfeiture of only $15,000.  <u>Id.</u> at

326.

     On appeal, the Supreme Court first established that forfeiture of currency for failing to

report is a form of punishment and, therefore, subject to the Excessive Fines Clause.  <u>Id.</u>  The

issue then became whether forfeiture in that case was excessive.  To determine this, it was

necessary to first determine what excessive in that context meant.  The Court concluded that the

appropriate question is whether the forfeiture is "grossly disproportional to the gravity of the

defendant's offense." <u>Id.</u> at 337.  If so, the forfeiture is unconstitutional under the Excessive

Fines Clause.  <u>Id.</u>

     After determining the appropriate standard, the Court went on to apply the standard to

<u>Bajakajian</u>'s facts.  Several factors were considered in this regard.  First, the Court expressly

found that Bajakajian's crime was solely a reporting crime and was not tied to any other illegal

activities.  <u>Id.</u> at 337-338.  The  Court also looked at who the statute was intended to target and

concluded that Bajakajian did not fall within that class - he was not a money launderer, drug

trafficker, or tax evader.  <u>Id.</u>  Next, the Court looked at the penalties Bajakajian faced under both

the statute defining the crime and the Guidelines.  <u>Id.</u> at 338-38.  The Court noted that although

Congress authorized a maximum fine of $250,000 and five years in prison for Bajakajian's

offense, the maximum sentence of six months in prison and a $5,000 fine authorized by the

Guidelines suggested a minimal level of culpability on Bajakajian's part.  <u>Id.</u> at 339 and n.14.

Finally, the amount of harm Bajakajian caused by failing to report the currency was discussed.

Id. at 339.  Here the Court found Bajakajian only caused minimal harm. Id.  If Bajakajian's crime had gone undetected the only harm that would have occurred was the deprivation of the government's knowledge of $357,144 leaving the country. Id.  After looking at these factors, the Court held that ordering forfeiture of the entire $357,144 would be grossly disproportionate to the gravity of Bajakajian's offense.  Id. at 343.

One question Austin left open and Bajakajian also failed to address is whether the level of the property's involvement in the crime should be considered in determining whether a forfeiture is excessive.  The tests laid out by lower courts since Austin generally fell into three categories. Some followed Justice Scalia's suggestion and applied an "instrumentality test", focusing on the use of the property in the commission of the illegal act, asserting that this test is the only way to preserve the "guilty property fiction" of traditional in rem forfeiture. See, e.g., United States v. Chandler, 36 F.3d 358 (4th Cir.1994), cert. denied, 514 U.S. 1082, 115 S.Ct. 1792, 131 L.Ed.2d 721 (1995). A few have applied a pure "proportionality test", the core of which is a comparison of the severity of the forfeiture with the seriousness of the crime. See, e.g., United States v. One Parcel of Real Property Located at 461 Shelby County Rd. 361, 857 F.Supp. 935 (N.D.Ala.1994).  Some combined the two approaches in some fashion. See, e.g., United States v. Premises Known as Rural Route No. 1 Box 224, 14 F.3d 864 (3d Cir.1994); United States v. Real Property Located in El Dorado County at 6380 Little Canyon Rd., 59 F.3d 974 (9th Cir.1995). See generally Sarah N. Welling & Medrith Lee Hager, Defining Excessiveness: Applying the Eighth Amendment to Civil Forfeiture After Austin v. United States, 83 Ky.L.J. 835 (1994-1995).

Eventually, the Eleventh Circuit weighed in on the issue in U.S. v. One Parcel Property Located at 427 and 429 Hall Street, 74 F.3d 1165 (11th Cir. 1996).  In this opinion, the panel

indicated that two steps are necessary. First, the property must be subject to forfeiture under the

statute. The Court stated:

> Section 881(a)(7) authorizes forfeiture of real property "which is used, or
> intended to be used, in any manner or part" to facilitate a violation of the
> Controlled Substances Act. 21 U.S.C. § 881(a)(7). The government must present
> evidence furnishing a reasonable ground for belief that a *substantial connection*
> exists between the property to be forfeited and the illegal activity. Id. at 1171 n.9
> (emphasis in original)(citing cases).

Thus, the panel instructed that the "instrumentality test" adopted by some courts was actually

"required by the statute itself, but not by the Eighth Amendment." Id. In any event, whether

required by the statute or the Eighth Amendment, we must first find a "substantial connection

existed" between the property and the illegal activity.

Once a "substantial connection" is shown between the property to be forfeited and the

illegal activity, the Eleventh Circuit applies a pure proportionality test to determine if forfeiting

that property would violate the Excessive Fines Clause. Id. at 1170. ("We conclude that the

appropriate inquiry with respect to the Excessive Fines Clause is, and is only, a proportionality

test.") The panel described that test as follows:

> [A] court must ask: Given the offense for which the owner is being punished, is
> the fine (imposed by civil forfeiture) excessive? While the core of proportionality
> review is a comparison of the severity of the fine with the seriousness of the
> underlying offense, it would be futile to attempt a definitive checklist of relevant
> factors. The relevant factors will necessarily vary from case to case. See United
> States v. Monroe, 866 F.2d 1357, 1366 (11th Cir.1989) (" 'The [E]ighth
> [A]mendment prohibits only those forfeitures that, in light of all relevant
> circumstances, are grossly disproportionate to the offense committed.' ")

In the 427 and 429 Hall Street case, the panel examined the following factors:

(1) the value of the property ($65,000 in that case); (2) the maximum Guidelines offense level

and fine levels for the offense (21 months and $40,000 fine, respectively); and (3) additional

factors such as possession of weapons, large amounts of cash or drugs, and proximity to a

school.  Applying these factors, the panel concluded, "Given a possible sentence of twenty-one months in prison and a $40,000 fine, and given the additional factors at work in this case, we conclude that forfeiture of a $65,000 piece of property does not violate the Excessive Fines Clause."

Later cases in the Eleventh Circuit fine-tuned this approach, though underscoring that it was not always easy to apply a proportionality test.  As one Court put it, "[t]ranslating the gravity of a crime into monetary terms . . . proportioned to the value of forfeited property - is not a simple task."  United States v. 817 N.E. 29th Drive Wilton Manors, Fla., 175 F.3d 1304, 1309 (11th Cir. 1999).  One specific problem that arises in forfeiture cases is when the value of the property sought is greater than the maximum fine authorized by the Guidelines, but less than the fine authorized by statute.  For example, any felony drug crime is subject to at least a $250,000 maximum fine under the statute, but if the Guidelines maximum fine were considerably less, it may not be realistic to apply the statutory maximum.  An instructive example is the following district court case from Alabama, where the Court faced this question and applied the guidelines maximum rather than the statutory.  In United States v. 892 County Road 505, No. 2:04CV750, 2006 U.S. Dist. LEXIS 151617 (M.D. Ala. 2006), the government sought forfeiture of a home in which the defendant had $102,000 of equity because the property was used to facilitate the sale of 109.94 grams of marijuana.  Id. at *17-18.  Because of prior convictions the defendant faced a maximum statutory fine of up to $500,000. Id. at *17.  The court knew the Guidelines allowed a fine of up to the statutory maximum when the statutory maximum is over $250,000. Id. at *18 n.9.  Nonetheless, the court believed the $5,000 maximum fine otherwise authorized by the Guidelines indicated the severity of the defendant's crime better than the statutory maximum fine.  See id. at *18.  Since the proportionality test is simply "a comparison of the severity of the

[forfeiture] with the seriousness of the underlying offense" the court held that ordering forfeiture of $102,000 of equity would result in an unconstitutionally excessive fine and refused to do so. See id. at *18-19. 892 County Road clearly supports the notion that statutory fines should be given little weight when a forfeiture would be disproportionate considering the Guidelines.

Bajakajian also seems to agree that the primary measure of the gravity of the offense should be the fines authorized by the Guidelines rather than the fines authorized by statute. The Supreme Court in that case noted that although Bajakajian's maximum statutory fine was $250,000, the fact that his Guidelines' maximum fine was only $5,000 "undercuts any argument based solely on the statute because they show that [Bajakajian's] culpability relative to other potential violators . . . is small indeed." See Bajakajian, 524 U.S. at 338-39 and 339 n.14.

Based on the above language, the Court concludes that the test for proportionality should be primarily based on the maximum likely fine under the Guidelines, and not the statute. This is not to say, however, that a fine that exceeds the maximum of the Guidelines recommendation is per force excessive. The Eleventh Circuit, in U.S. v. 817 N.E. 29th Drive, Wilton Manors, Fla., 175 F.3d 1304 (11th Cir. 1999), indicate that Courts should consider a totality of factors, including both the Guidelines maximum and the statutory maximum:

> In this case, [defendant] was convicted on the basis of four sales of cocaine totaling about sixty grams, which under federal law is a violation of 21 U.S.C. § 841 (1994). The maximum statutory fine for the offenses was $1,000,000-well in excess of the $70,000 value of [defendant's] property. See 21 U.S.C. § 841(b)(1)(C). Turning to the sentencing guidelines, under the guidelines in effect in 1991, [defendant's] conduct would be a level sixteen offense. See U.S.S.G. § 2D1.1(c)(14). In most cases, the maximum fine that could be imposed for level sixteen offenses was $50,000. See U.S.S.G. § 5E1.2(c)(2)-(3). Looking solely at this fact, we could conclude that the forfeiture of property valued at approximately $70,000 was not grossly disproportionate to [defendant's] offense. The sentencing guidelines, however, go further and state that where a statute authorizes a maximum fine of greater than $250,000, the maximum fine imposed by the guidelines does not apply and the statutory maximum applies instead. See

U.S.S.G. § 5E1.2(c)(4). Thus, the sentencing guidelines and the statute agree that a fine of up to $1,000,000 would be proportional to [defendant's] crimes; consequently, the forfeiture of a $70,000 property based on those crimes does not violate the Eighth Amendment.

Thus, even though the Guidelines should probably be the primary consideration in assessing the proportionality of a forfeiture, Eleventh Circuit cases make it clear that the value of the property does not actually have to fall exactly within the range of fines authorized by the Guidelines; the disparity just cannot be grossly disproportionate. See United States v. 817 N.E. 29th Drive, 175 F.3d 1304, 1310-11 and n.11 (11th Cir. 1999) (noting that forfeiture of $70,000 property is not grossly disproportionate where Guidelines authorized a maximum fine of $50,000); United States v. 427 and 429 Hall Street, 74 F.3d 1165 (11th Cir. 1996) (finding that forfeiture of property valued at approximately $65,000 was not an excessive fine where the Guidelines authorized a fine of up to $40,000); United States v. Degregory, 480 F. Supp. 2d 1302, 1304 (S.D. Fla. 2006) ($150,000 property forfeiture not excessive where Guidelines authorized $60,000 fine); United States v. 7079 Chilton County Road 37, 123 F. Supp. 2d 602, 610-11 (M.D. Ala. 2000) (forfeiture of property valued between $110,000 and $150,000 "is near the maximum guidelines fine [of $75,000] and, thus not 'grossly disproportional' to the severity of the crime charged").

Before turning to the facts of the instant case, the Court must first recognize the procedure to be followed in a case like this one, particularly which issues should be resolved by the Court and which are typically the province of the jury. In U.S. v. One Parcel of Real Estate at 1012 Germantown Road, Palm Beach County, Fla., 963 F.2d 1496 (11th Cir. 1992), the Eleventh Circuit instructed:

The structure of a section 881 forfeiture proceeding is well settled by statute and case law. First, a claimant must establish standing as an owner of the contested

property. United States v. Certain Real Property, 724 F.Supp. 908, 913 (S.D.Fla.1989). In this case, claimant's ownership is uncontested.

Once a claimant has established standing, the burden shifts to the government to prove probable cause for the institution of the forfeiture action. 19 U.S.C. § 1615; United States v. One 1979 Porsche Coupe, 709 F.2d 1424, 1426 (11th Cir.1983). The trial court bears the responsibility for determining whether the government has proven probable cause. 19 U.S.C. § 1615. The government must convince the judge that it had a "reasonable ground for belief of guilt, supported by less than prima facie proof, but more than reasonable suspicion." United States v. A Single Family Residence, 803 F.2d 625, 628 (11th Cir.1986). In presenting its case, the government is permitted to present otherwise inadmissible hearsay evidence. Id. at 629 n. 2.

Once probable cause is established, the burden shifts to the claimant to prove by a preponderance of the evidence a defense to the forfeiture. United States v. 15603 8th Avenue North, Lake Park, 933 F.2d 976, 979 (11th Cir.1991).

Pursuant to these instructions, the Court has two tasks[1] before it. First, the Court, without a jury, must determine whether a reasonable ground exists for a belief that a *substantial connection exists* between the property to be forfeited and the illegal activity, such that the statute, 21 U.S.C. § 881(a)(7) allows forfeiture. See, United States v. Real Property and Residence at 3097 S.W. 111th Avenue, 921 F.2d 1551 (11th Cir.1991) (single illegal drug transaction taking place on property is sufficient to show connection between the property and drug activity so as to permit forfeiture); United States v. Approximately 50 Acres of Real Property, 920 F.2d 900, 903 (11th Cir.1991) (finding substantial connection permitting forfeiture when the offender used his home "to negotiate and plan an essential component of a specific drug transaction that actually took place"). Here, the evidence is undisputed about what was found in the home pursuant to the search warrant. Pound quantities of marijuana were found in various locations in the residence (totaling 3.13 pounds), as were large amounts of U.S. currency

---

[1]As noted above, ownership of the property does not appear to be contested in this case.

and drug paraphernalia to include scales, heat sealers, and baggies which are commonly used in the large scale distribution of marijuana.  This is sufficient to show a connection between the property and drug activity, even without having to pass on the credibility of Mims and Nelson.

After finding that connection, the Court must apply the proportionality analysis from the 427 and 429 Hall Street case.   The proportionality test is simply "a comparison of the severity of the [forfeiture] with the seriousness of the underlying offense."  Determining the seriousness of the offense, of course, requires making factual and credibility determinations.   If the factfinder finds that the government substantiated the allegations that Haynes sold Kevin Nelson several hundred pounds of marijuana over the years, (See Doc. 14, Ex. A ¶ 4), the property is almost certainly subject to forfeiture.  With over 100 kg of marijuana involved, Haynes's offense would allow a maximum statutory fine of $2,000,000.  21 U.S.C. § 841 (b)(1)(B). Under the Guidelines more than 100 kg of marijuana results in a base offense level of at least 26. U.S. Sentencing Guidelines Manual § 2D1.1(c)(7) (2007).  For an offense level of 26, the Guidelines authorize a fine of up to $125,000.  U.S. Sentencing Guidelines Manual § 5E1.2(c)(3) (2007).  Therefore, if the Court finds that Haynes possessed over 100 kg of marijuana, the loss from the home would likely be worth less than the maximum fine authorized by the Guidelines.   If the property is worth less than the maximum fine authorized by the Guidelines, ordering forfeiture is certainly permissible under the Eighth Amendment.

A closer question is presented if the government can only show the 3.13 pounds found at the scene and that Tony Mims purchased 14 pounds of marijuana from Haynes.  (Doc. 14 at 2 ¶ 1 and Ex. A ¶ 3).  If Haynes distributed 14 pounds of marijuana to Tony Mims plus 3 more pounds she would face a maximum statutory fine of $250,000 and a maximum prison term of 5 years. 21 U.S.C. § 841 (b)(1)(D).  Under the Guidelines, 17 pounds of marijuana results in a base

offense level of 14.   U.S. Sentencing Guidelines Manual § 2D1.1(c)(13) (2007).  An offense

level of 14 authorizes a court to impose a maximum fine of $40,000. U.S. Sentencing Guidelines

Manual § 5E1.2(c)(3) (2007).  If the home's value substantially exceeds that, ordering forfeiture

could violate the Excessive Fines Clause.   See United States v. 817 N.E. 29th Drive, 175 F.3d

1304, 1310-11 and n.11 (noting that forfeiture would be constitutionally permissible, even if

property was worth $110,000, where Guidelines authorized a fine of $50,000 and statute allowed

a $1,000,000 fine).

However, should the factfinder only find Haynes responsible for the marijuana found in

the home during the search, the question becomes more difficult.  Haynes admits that

approximately 3.13 pounds (1.42 kilograms) of marijuana were found in her home.  (Doc. 17 at

3.)  If Haynes has no prior criminal history, she faces a maximum statutory fine of $250,000 and

a maximum prison term of five years based on this admission alone.  21 U.S.C. § 841 (b)(1)(D).

Under the Guidelines, possession with the intent to distribute 1 to 2.5 kilograms of marijuana

results in a base offense level of 10.  U.S. Sentencing Guidelines Manual § 2D1.1(c)(15) (2007).

The Guidelines authorize a maximum fine of $20,000 for an offense level of 10. U.S. Sentencing

Guidelines Manual § 5E1.2(c)(3) (2007).  This would be a harder case to support forfeiture.

Additionally, the Eleventh Circuit instructs that other findings could alter this analysis, such as if

her home were near a school, if guns were involved, if violence was involved or if large amounts

of cash were found.

In sum, because of these disputed factual issues, the Court concludes that summary

judgment is not appropriate regarding the issue of whether the forfeiture is an excessive fine.

Accordingly it is hereby

**ORDERED AND ADJUDGED:**

1.      The Motion for Summary Judgment, Doc. 14, is granted in part and denied in part. It is granted with regard to the issue of whether there is probable cause to conclude that a substantial connection exists between the house and illegal drug activity. It is denied with regard to whether the forfeiture of the house is an excessive fine under the Eighth Amendment.

2.      This case must therefore proceed to a jury trial with special verdict on the issue of proportionality alone. During this trial, the parties shall include evidence relating to the following issues: (a) the value of the home, including the amount of equity of Ms. Haynes; (b) the amount of drugs connected to the house; and (c) whatever other factors, such as proximity to a school, etc., that would relate to the seriousness of the offense.

**DONE AND ORDERED** this  *25th*  day of May, 2010

*s/Maurice M. Paul*

Maurice M. Paul, Senior District Judge